**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RICHARD ALLEN THURSTON,

    Petitioner,

v.

    Civil Action No.: BAH-24-1095

WILLIAM BOHRER, *et al.*,

    Respondents.

**MEMORANDUM OPINION**

On April 18, 2024, Petitioner Richard Allen Thurston, a prisoner committed to the custody

of the Maryland Division of Correction and incarcerated in Maryland Correctional Training Center

in Hagerstown, Maryland, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

challenging his conviction for first-degree burglary and illegal possession of firearms charges from

the Circuit Court for Wicomico County, Maryland. ECF 1. Respondents Warden William Bohrer

and the Maryland Attorney General filed an Answer together with relevant copies of State court

records in response to the Petition and this Court's Order to Show Cause. ECF 7. The issues have

been fully briefed; therefore, a hearing is unnecessary. *See* Rule 8(a), *Rules Governing Section*

*2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also*

*Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C.

§ 2254(e)(2)). For the reasons stated in full below, the Petition shall be denied and a certificate of

appealability shall not issue.

## I.   BACKGROUND

Petitioner Richard Allen Thurston was indicted on September 18, 2017, in the Circuit Court

for Wicomico County, Maryland on charges of first-degree burglary, third-degree burglary, fourth-

degree burglary of a dwelling, illegal possession of a regulated firearm, possession of rifle/shotgun by a disqualified person, two counts of possession of a stolen firearm, and illegal possession of ammunition. ECF 7-1 at 36 (Indictment). Thurston was charged in connection with the July 29, 2017, burglary of Patrick and Kristen Davis's home on Sixty Foot Road located in Pittsville, Maryland. *Id.* at 37. Many of Thurston's claims relate to issues that arose during his pre-trial suppression hearing; therefore, this Court will briefly review those proceedings.

### A.    Suppression Hearing

On March 8, 2018, there was a hearing to suppress Thurston's statement to the police made less than a month after the burglary on the basis that his waiver of his *Miranda* rights was invalid. ECF 7-5. Thurston was represented at the hearing by Archibald McFadden who, at a prior hearing, asked the court to strike the appearance of Thurston's prior counsel, Tamika Fultz, and to enter his appearance. ECF 7-4 at 3. McFadden informed the court at the motions hearing that Thurston had filed a pro se motion stating that "if the motions that he ha[d] filed are not argued, then [McFadden] would become at that point ineffective" and Thurston would want McFadden replaced as counsel. *Id.* at 4. McFadden informed the court that he cannot ethically argue what Thurston wants him to argue. *Id.* at 7.

Thurston told the court he wanted counsel to argue that the Fourth Amendment was violated when perjurious information was used to find probable cause by the Commissioner to issue the arrest warrant. ECF 7-5 at 5. When asked to explain, Thurston claimed that Detective William Oakley lied to the Commissioner when he claimed that Thurston was in possession of a safe containing firearms on July 29, 2017, because he never found the safe or the firearms. *Id.*

After extensive argument on Thurston's motion to remove McFadden as counsel, the court found that Thurston did not have a meritorious reason to discharge McFadden, "[b]ecause he's not

2

obligated to do something in your defense which is unethical for him to do." ECF 7-5 at 28. When given the choice to discharge counsel or to go forward with the suppression hearing with counsel, Thurston declined to discharge counsel. *Id.* at 36-37.

After Thurston was arrested on August 8, 2017, he was brought to the Wicomico police station for questioning, which was done by Detective William Oakley and Matt Clark. ECF 7-5 at 39-65. Detective Oakley read Thurston his *Miranda*[1] rights. *Id.* at 42-43. Thurston stated twice that he had been intimidated and threatened, but Oakley understood that to be in reference to the arrest and not to the conversation being held in the police station. *Id.* at 53-54. When Thurston asked what he was being arrested for, Oakley declined to answer the question until the *Miranda* warning was completed. *Id.* at 57. When Oakley did answer the question, he told Thurston they had brought him in to ask him about a theft that had occurred in the area of the Dollar General in Pittsville. *See* ECF 7-2 at 246 (Ct. Spec. App. Op. on Direct Appeal).

The remainder of the interview was described by the Court of special Appeals as follows:

> After appellant signed the waiver, the detectives asked him questions about his whereabouts when the burglary occurred. Appellant initially stated that he was in Baltimore County visiting his nieces but, when shown photographs taken by the surveillance cameras of a store in the area of and at the time of the burglary, he admitted that the photographs were of him and his truck. Near the end of the interview, Detective Oakley gave appellant the application for statement of charges and a copy of the arrest warrant. After the interview, appellant was taken to the Commissioner's Office.

*Id.* at 247.

The trial court denied the motion to suppress, finding that Thurston seemed "very alert" in the video of the interview and that his claim that he requested counsel before he was brought into the interview room lacked credibility. ECF 7-5 at 96-97, 100.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

**B.    Trial**

During the course of various pre-trial proceedings Thurston was represented by "the following attorneys . . . that he either discharged or requested that their appearance be stricken: Assistant Public Defender ("APD") Tamika Fultz; APD Arch McFadden; Richard Savington, Esq., panel attorney; and Anders Randrup, III, Esq., panel attorney." ECF 7-2 at 355, n.3. Thurston then represented himself at trial with standby counsel provided by Jan-Paul Lukas. *Id.* Thurston opted to be tried by a jury.

Kristen Davis testified that on July 29, 2017, she returned home from a shopping trip around 3:00 p.m. and saw that her house had been broken into and that her husband's gun safe was missing. ECF 7-12 at 135-36. She described the area where her house is located, stating that there is a store called JT's Market near her house with a corn field that separates her house from the store. *Id.* at 137. Further down the road there is a Dollar General store. *Id.* When she returned home, she discovered the door on the side of the house closest to JT's Market had been broken into and there were tire tracks leading up to a door on the opposite side of the house that were not there before. *Id.* at 138, 146. She explained that when they first got the gun safe they brought it into the house through the back door and "jimmied it off the tailgate [of a truck] and used a dolly to bring it around into the dining room." *Id.* at 147.

Patrick Davis, Kristen Davis's husband, testified that the gun safe was approximately five feet tall and three feet deep and that it could fit into the bed of a pick-up truck. ECF 7-12 at 170. He also testified that the safe contained a 22 rifle, an AR-15 rifle, miscellaneous ammunition for all of the guns; Smith and Wesson .40 caliber handgun worth approximately $350; Smith and Wesson model MP15 assault rifle; Henry 22 LR (rifle); and two Savage Access, one adult model and one youth model. *Id.* at 171-72.

4

JT's Market had video surveillance footage that captured a white pick-up truck with damage to the front passenger side and a handcart in the back of the truck driving in the area of the Davis house and the store. ECF 7-13 at 33-36. Detective Oakley testified that a photograph of the person driving the truck and a picture of the truck were put on social media with a request for information about the identity of the person depicted. *Id.* at 37. Additionally, the license plate was checked through MVA records, it was verified that it was registered to Richard Thurston, and, during the interview with Thurston, Thurston admitted that it was him in the truck depicted in the video. *Id.*

Detective Oakley testified that the truck is seen on the video going toward the Davis residence twice. *Id.* at 39. The truck went to the field across the street from the Davis house, then it pulled out of the field, across the street toward the Davis residence. *Id.* at 43. Specifically, at 1:20 p.m. the truck left the field and drove toward the house and at 1:23 p.m. the truck left the house and drove back toward the empty field. *Id.*

Detective Oakley went to a car dealer where Thurston bought his truck and measured a similar truck. ECF 7-13 at 45-46. From the ground to the top of the tailgate measured 36 inches. *Id.* at 46. The distance between the outside tread of the passenger side rear tire and the outside tread of the driver side tire was 75 and three-quarter inches. *Id.* at 47.

When Detective Oakley and Detective Clark arrested Thurston he claimed he was with his nieces in Baltimore on July 29, 2017. ECF 7-13 at 65. Oakley testified that Thurston was adamant about being in Baltimore and he had shown him a calendar to verify the date. *Id.* at 65-66. It was established with Thurston that nobody else ever drives his truck, that his truck had damage to the front passenger side, and that he had no reason to be in the Pittsville area. *Id.* at 67-69. When Detective Oakley told Thurston there was a burglary in a residence, that there was video, and that

his truck was seen in the area, Thurston continued to maintain he was not in the area at the time. *Id.* at 69-70. When Thurston was told that guns had been stolen, Detective Oakley testified that Thurston asked if the guns were in a safe despite the fact that there had been no mention of a safe. *Id.* at 70. When Thurston was shown still pictures taken from the video surveillance, he admitted it was his truck depicted and admitted that another photo was a picture of him at JT's Market. *Id.* at 75-76; 77. Detective Oakley testified that despite giving Thurston multiple chances to explain his presence in Pittsville, Thurston could not offer a plausible explanation for his presence there. *Id.* at 78. Detective Oakley admitted that they never recovered the gun safe or the guns. *Id.* at 79.

When Thurston began to cross-examine Detective Oakley he attempted to question him about the timing of the arrest warrant. ECF 7-13 at 147-54. After lengthy back and forth discussions between the bench and Thurston, it became clear that Thurston was arguing that having a search warrant issued after he was arrested means that the arrest warrant was based on perjury because he was charged with possession of guns and the search warrant was issued to search for the guns. *Id.* at 150-51. The court explained to Thurston that he was charged with being in possession and stealing the guns based on circumstantial evidence, which does not mean the police have to stop looking for the guns. *Id.* at 151. The court then stopped all questions regarding the arrest and search warrant process. *Id.*

Detective William Clark testified as to the execution of a search warrant on Thurston's truck on August 21, 2017. ECF 7-13 at 171-72. Recovered during the search were a handcart, various tools, hand tools, pry bars, wrecking bars, work gloves, binoculars, and a mini sledgehammer. *Id.* at 174-75; 178; 184.

On January 9, 2019, the trial was adjourned until January 23, 2019, at which time the jury was instructed and closing arguments were given. ECF 7-14. On January 23, 2019, the jury

returned a verdict of guilty on all counts. *Id.* at 101-2. Sentencing occurred on March 14, 2019, and Thurston was sentenced on count one, burglary in the first-degree, to 20 years consecutive to any other sentence he was obligated to serve. ECF 7-16 at 28. On count four, illegal possession of a regulated firearm, he was sentenced to serve five years consecutive to count one. *Id.* On count five, possession of a rifle or shotgun by a disqualified person, he was sentenced to serve three years to run consecutive to count four and count one. *Id.* The court did not impose a sentence for counts six and seven, the two counts of possession of stolen, regulated firearms, and imposed a one year sentence for possession of ammunition to run consecutive to counts five, four and one. *Id.* at 29.

### C.    Direct Appeal

Thurston raised a total of six claims on direct appeal:

> 1. Did the hearing court err by denying the motion to suppress evidence of Mr. Thurston's statement made while in police custody?
>
> 2. Did the court below fail to comply with Maryland Rule 4-215(e) when permitting Mr. Thurston to discharge counsel on September 12, 2018?
>
> 3. Did the trial judge abuse its discretion by permitting the jurors to separate for two weeks during trial?
>
> 4. Is the evidence legally insufficient to sustain Mr. Thurston's convictions?
>
> 5. Was Mr. Thurston denied the effective assistance of counsel such that he was unable to litigate his claim of a violation of the Fourth Amendment?
>
> 6. Did the trial judge interfere with Mr. Thurston's due process right to present his defense [by quashing the subpoena issued for Commissioner Dickerson]?

ECF 7-2 at 113-14. On August 3, 2020, in an unreported opinion issued by the Court of Special Appeals (n.k.a.: the Appellate Court of Maryland), Thurston's conviction was affirmed, the appellate court noting in relevant part that:

[T]he evidence was sufficient to sustain Thurston's convictions, . . . a jury could find Thurston guilty of the crimes charged by reasonably inferring that he drove to the Davis's house, broke in while they were gone, backed his truck across the yard and up to the house, and using a hand-dolly dragged the safe containing the guns and ammunition across the floor, out of the house, and into the bed of his truck and left. The jury could infer his intent to steal the safe and its contents and his possession of the guns and ammunition from the above actions.

ECF 7-2 at 272-73. Other aspects of the appellate court's decision are addressed herein as they relate to the claims raised in Thurston's federal habeas petition.

### D.    Post-Conviction

In his post-conviction petition, Thurston raised eight claims:

I. Counsel Tamika Fultz provided ineffective assistance by failing to object to the State's delay in providing discovery at the motions hearing.

II. The State's Attorney committed *Brady* violation by preventing Petitioner from calling Commissioner Dickerson as a witness. This resulted in the concealment of exculpatory and impeachment information.

III. Counsel Arch McFadden provided ineffective assistance by failing to enter his appearance.

IV. The [trial court] Court erred by failing to comply with Md. Rule 4-215(e), governing the right to discharge counsel.

V. Counsel Arch McFadden provided ineffective assistance by failing to advance Petitioner's arguments at the suppression hearing.

VI. Counsel Arch McFadden provided ineffective assistance by failing to argue Petitioner's Miranda waiver was invalid at the suppression hearing.

VII. Counsel Anders Randrup provided ineffective assistance by failing to advance arguments in the Motion for *Franks* hearing.

VIII. The [trial court] Court erred by failing to advise Petitioner has the right to have a bench trial, not just a jury trial.

ECF 7-2 at 355-56. The post-conviction court denied relief on January 8, 2024. *Id.* at 354-367. Thurston's application for leave to appeal the denial of post-conviction relief was summarily denied on March 27, 2024. *Id.* at 477. The mandate issued on April 26, 2024. *Id.* at 484.

Thurston's request for certiorari review was denied by the Maryland Court of Appeals (n.k.a. Supreme Court of Maryland) on June 18, 2024. *Id.* at 485.

### E.      Federal Habeas Petition

In the Petition he filed with this Court, Thurston asserts the following claims: (1) ineffective assistance of counsel by Tamika Fultz for failing to object to the State's delay in providing discovery in violation of Md. Rule 4-213(c) (ECF 1 at 5); (2) *Brady*[2] violation when the State's Attorney prevented Thurston from calling Commissioner Dickerson as a witness resulting in the concealment of exculpatory evidence (*id.*); (3) ineffective assistance of counsel by Arch McFadden when he did not enter his appearance (*id.* at 5, 16-19); (4) the court failed to comply with Md. Rule 4-215(e) regarding discharge of counsel (*id.* at 5, 27); (5) ineffective assistance of counsel by Arch McFadden when he failed to advance certain arguments at a suppression hearing (*id.* at 30-33); (6) ineffective assistance of counsel by McFadden for failing to argue waiver of *Miranda* rights was not voluntary (*id.* at 35); (7) ineffective assistance of counsel by Anders Randrup by failing to advance certain arguments at a *Franks*[3] hearing (*id.* at 35); and (8) the trial court erred when it did not advise Thurston of his right to a bench trial and not just a jury trial (*id.* at 36).   Respondents assert that each of Thurston's claims are either meritless under the required deferential standard of review or do not present a cognizable federal habeas claim. ECF 7.

## II.     STANDARDS OF REVIEW

### A.      Deferential Review

The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone,*

---

[2]      *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[3]      *Franks v. Delaware*, 438 U.S. 154 (1978).

543 U.S. 447, 455 (2005) (citations omitted); *see also Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). The standard is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted); *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement") (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court's adjudication is contrary to clearly established federal law under § 2254(d)(1) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "For an 'application of federal law' to be 'unreasonable,' it must be 'objectively' so." *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021) (quoting *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020)). "To qualify, the state court must 'correctly identif[y] the governing legal

principle from the Supreme Court's decisions but unreasonably appl[y] that principle to the facts of the particular case.'" *Id.* (quoting *Tyler v. Hooks*, 945 F.3d 159, 166 (4th Cir. 2019)).

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.* "[D]eterminations of facts are 'unreasonable' when they are "'sufficiently against the weight of the evidence.'" *Mahdi*, 20 F.4th at 892 (citing *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010))). A "state court's factual determinations are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence." *Bennett v. Stirling*, 842 F.3d 319, 322 (4th Cir. 2016).

### B.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. The Supreme Court has stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must ordinarily meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this

standard, the petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

On the issue of deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Judicial scrutiny of counsel's performance must be highly deferential" and not based on hindsight. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Under the Sixth Amendment, a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).

On the issue of prejudice, "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374. Thus, in order to prevail, the petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 375. A determination whether the attorney's performance was deficient need not be made if it is clear that there was no prejudice. *See Strickland*, 466 U.S. at 697.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## III.    ANALYSIS

### A.    Ineffective Assistance of Counsel for Failure to Object to Discovery Delay

In his first claim, Thurston alleges Tamika Fultz rendered ineffective assistance of counsel when she failed to object to the State's delay in providing discovery. ECF 1 at 7. This claim was addressed by the post-conviction court when it found that Ms. Fultz's performance was not deficient when, instead of objecting to the discovery being late, she requested a postponement because there were too many disclosures to review. ECF 7-2 at 359. The post-conviction court reviewed the requirements of Md. Rule 4-263(n) which states that: "If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, **grant a reasonable continuance**, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances . . ." *Id.* at 358 (emphasis added). Thurston's claim that Fultz's request for postponement ran afoul of the Maryland Rules was demonstrably incorrect. Further, the post-conviction court found that Thurston was not prejudiced by Fultz's request for a postponement because the transcript demonstrated the postponement did not violate the *Hicks* date for Thurston's trial. *Id.* at 359-60. The post-conviction court's decision is not an objectively unreasonable application of federal law to the claim raised by Thurston. Federal habeas relief is denied on this claim.

13

### B.   *Brady* Claim

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985). In order to prevail on a *Brady* claim, it must be established that the evidence at issue is both favorable to the defense and that the unavailability of the evidence calls into question the result of the trial. *Id.* at 678. The Supreme Court has made it clear that there is no distinction between exculpatory evidence and impeachment evidence in the context of a *Brady* analysis. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). There is no requirement that the guilty finding must be overturned unless suppression of the impeachment evidence so limited the defense's ability to cross-examine an accusing witness that "its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

In his *Brady* claim, Thurston asserts that the State's Attorney withheld exculpatory evidence from him by preventing him from calling Commissioner Dickerson as a witness at trial. ECF 1 at 5. Commissioner Dickerson issued the arrest warrant and determined the charges that were included in the warrant, beyond that she had no further involvement in the case. The post-conviction court found that this claim had been "finally litigated" within the meaning of Md. Code Ann., Crim. Proc. § 7-106(a), meaning it could not be relitigated in post-conviction proceedings. ECF 7-2 at 360-61. The post-conviction court relied on the following analysis by the Court of Special Appeals:

> Lastly, appellant argues that the trial court violated his due process right to present a defense when it quashed a subpoena he filed for Wicomico County

14

District Court Commissioner Megan Dickerson, and by curtailing the State's questioning of Detective Oakley on the subject of the commissioner's role in what he characterizes in his appellate brief "as a fishing expedition founded on perjury[.]" The State disagrees, as do we.... [T]here is no suggestion that Commissioner Dickerson's testimony would be relevant to whether Detective Oakley falsely represented the probable cause in the charges filed against him. Additionally, the trial court found her testimony irrelevant to appellant's contention because appellant was later charged in the circuit court by way of a criminal indictment. Given the above, compelling Commissioner Dickerson's presence at appellant's criminal trial would have been burdensome, annoying, and a waste of judicial resources, and therefore, the trial court did not error in quashing the subpoena.

ECF 7-2 at 360, quoting *Thurston*, No. 182, Sept. Term 2019, at 16-17. Thurston has failed to establish that the State court has misapplied well-established federal law to the facts of his case as determined by the Supreme Court of the United States. Federal habeas relief is unavailable on this claim.

## C.    Ineffective Assistance of Counsel – McFadden's Entering His Appearance

Thurston maintains that McFadden failed to enter his appearance in his case and therefore rendered ineffective assistance of counsel. ECF 1 at 5, 17. Thurston argues that McFadden violated Maryland rules and policies by not entering his appearance and assigns error to the post-conviction court's finding that McFadden requested to enter his appearance at a hearing held on February 8, 2018, because there was no hearing on that date. *Id.* at 17. Thurston's claim that the post-conviction court's fact-finding is flawed is refuted by the record which includes a transcript of a hearing that occurred on February 8, 2018, during which Thurston was represented by McFadden. ECF 7-4. During that hearing, McFadden entered his appearance and replaced Fultz as Thurston's attorney. *Id.* at 5-6. This claim has no merit and federal habeas relief shall be denied.

## D.    Discharge of Counsel

Thurston alleges that the trial court did not comply with Md. Rule 4-215(e) when determining whether he had meritorious cause to discharge his counsel. ECF 1 at 5, 27. Thurston

15

states that he had meritorious reasons to dismiss Tamika Fultz as counsel which the trial court never considered which he claims is reversible error. *Id.* at 27.

This claim does not present a cognizable claim for federal habeas relief. A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C.A. § 2254(a). For a claim of relief presented under § 2254 to be cognizable for review, the petitioner must assert a violation of federal law. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *see also Young v. Warden, Md. Penitentiary*, 383 F. Supp. 986, 1009 (D. Md. 1974) ("It is axiomatic that only the violation or denial of some federal constitutional right, and not alleged errors in the interpretation or application of state law, can be the basis for federal habeas corpus relief."), *aff'd*, 532 F.2d 753 (4th Cir. 1976). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). Here, Thurston centers his claim only on the requirements of a State procedural rule. As such, the claim does not state a claim upon which federal habeas relief may be granted.

### E.    Ineffective Assistance of Counsel – McFadden and Search Warrant

Thurston also claims that McFadden was ineffective for refusing to make arguments at a suppression hearing that he wanted him to make. ECF 1 at 30-34. Thurston takes issue with McFadden's refusal to argue that the search warrant was invalid when it was executed beyond the 15-day deadline noted on the warrant. *Id.* at 31-33. He explains that the search warrant was issued on August 21, 2017, but was not executed until September 8, 2017, which is 18 days after it was issued. *Id.* Thurston wanted McFadden to argue that anything obtained as a result of this search

16

warrant should be suppressed as "fruits of the poisonous tree" because it violated the Fourth

Amendment to execute the warrant beyond the 15-day time period. *Id.* at 34.

At the post-conviction proceeding Thurston alleged that McFadden's representation fell

below the Sixth Amendment standard because he failed to advance the following arguments at a

suppression hearing: (1) Detective Oakley misrepresented facts in his statement of probable cause

to Commissioner Dickerson; (2) the charging document issued by the Commissioner Dickerson

did not meet the required standard of probable cause; (3) the arrest warrant violated the Fourth

Amendment, rendering all evidence obtained through subsequent search warrants as inadmissible

under the "fruit of the poisonous tree" doctrine; (4) investigators were wrong to obtain a charging

document and a warrant for his arrest 18 hours before he was questioned; (5) investigators were

wrong to obtain search warrants after they interrogated him; and (6) the search of Thurston's

pickup truck and seizure of items in it violated the Fourth Amendment. ECF 7-2 at 361. In

rejecting this claim, the post-conviction court noted that the Fourth Amendment claim was in fact

fully litigated at the March 8, 2018, suppression hearing. *Id.* at 362. At that hearing, McFadden

informed the court that there were certain arguments Thurston wanted him to make that he was

ethically prohibited from making. *Id.* The post-conviction court noted that counsel is granted

wide latitude in his choice of strategies. *Id.*, citing *Harrington v. Richter*, 562 U.S. 86 (2011)

("Rare are the situations in which the 'wide latitude counsel must have in making tactical

decisions' will be limited to any one technique or approach."). The post-conviction court further

noted that:

> In *Harrington*, the Supreme Court noted that it is not necessary for trial counsel:
> to prepare for every contingency; to pursue strategies which would be fruitless
> or harmful; or to adopt a strategy suggested by the defendant where trial counsel
> believes the defendant is lying. Trial counsel should not be faulted for failing to
> pursue a strategy for which there is no supporting evidence. *Gilliam v. State*, 331
> Md. 651 (1993), *cert. denied*, 510 U. S. 1077 (1994).

In the case *sub judice*, on March 8, 2018, Mr. McFadden indicated that there were certain issues Mr. Thurston wanted him to litigate that he would not be able to ethically litigate based on his knowledge of the law. (T. 3/8/2018 P. 7, 16). Mr. McFadden's strategy did not fall below an objective standard of reasonableness. *Coleman*, 434 Md. at 331. Therefore, Petitioner cannot show that Mr. McFadden was deficient and failed to satisfy the first prong of *Strickland*. *Strickland*, 466 U.S. at 687. Assuming *arguendo*, that Mr. McFadden was deficient, this Court is not persuaded that Mr. McFadden's actions prejudiced Petitioner because those Fourth Amendment issues were already litigated and denied during the suppression hearing.

ECF 7-2 at 362.

The analysis of the ineffective assistance of counsel claim is without error and federal habeas relief is denied as to that claim.

### F.   Ineffective Assistance *-Miranda* Waiver

Thurston alleges that Arch McFadden provided ineffective assistance of counsel because he failed to argue at the suppression hearing that his waiver of his *Miranda* rights was invalid. ECF 1 at 35. Thurston raised this claim on direct appeal and the appellate court found that his waiver was valid:

Moreover, although there is no evidence that the detectives advised appellant of the specific charges against him before he waived his Miranda rights, it is undisputed that he was advised prior to waiving his rights that he was suspected of committing a theft in Pittsville. Therefore, contrary to appellant's argument, he was aware of the subject matter of the interrogation. In sum, based upon our review of the record developed at the suppression hearing, we conclude that the circuit court properly denied appellant's motion to suppress his statement to the police.

*See Thurston*, No. 182, Sept. Term 2019, at 6. ECF 7-2 at 363.

In the context of an ineffective assistance of counsel claim, the post-conviction court noted that the Supreme Court "has recognized that trial counsel need not engage in strategies that are futile, detrimental, or based on a defendant's suggestion if counsel believes the defendant is untruthful." ECF 7-2 at 363, citing *Harrington*, 562 U.S. 86. The *Miranda* issue was litigated and

18

denied during the suppression hearing, and in the post-conviction court's view, McFadden was not deficient for declining to adopt Thurston's suggested arguments. Habeas relief is denied on this ground.

### G.   Ineffective Assistance of Counsel – Anders Randrup and *Franks* Hearing

In this claim, Thurston claims that Anders Randrup provided ineffective assistance of counsel when he failed to advance certain arguments in a *Franks* motion hearing. ECF 1 at 35. He again raises the issue that the search warrant was executed beyond the 15-day time period, as he did in connection with his claim regarding McFadden's representation at a suppression hearing. Indeed, the post-conviction court characterized this claim as being the same as "Claim V" regarding McFadden. ECF 7-2 at 364. The court then noted that Randrup filed a Motion for a *Franks* hearing on August 4, 2018, and raised several arguments regarding the warrant; the motion was denied two days later. *Id.* Thurston's claim that Randrup did not argue for suppression of the warrant is belied by the record. *Id.*

In the context of this claim, the post-conviction claim did not find Thurston's testimony credible and concluded he had not sufficiently demonstrated that the performance of Randrup was deficient. ECF 7-2 at 364. The post-conviction court's assessment of this ineffective assistance of counsel claim survives the deferential scrutiny required by federal law. Habeas relief is denied on this claim.

### H.   Failure to Advise of Right to Bench Trial

Thurston asserts that the trial court erred by failing to advise him that he had a "mandatory right to have a bench trial, not just a jury trial." ECF 1 at 36. Thurston cites *Thomas v. State*, 89 Md. App. 439, 598 A.2d 789 (1991) and Md. Rule 4-246(b) in support of his position that the "defendant's right to waive his rights to a jury and have a right to a bench trial by a judge or waive

a judge trial and have a jury trial" must be made part of the record. *Id.* Thurston states that he was never told he had a right to a bench trial and therefore did not knowingly waive his right to one. *Id.* at 37-38.

The post-conviction court addressed this claim in its opinion. ECF 7-2 at 365. It first noted that Thurston had cited *Bruce v. State*, 328 Md. 594 (1992) in support of his claim; however, that case held that the trial court was not required to conduct an on-the-record inquiry to determine whether a defendant in a capital sentencing proceeding knowingly and voluntarily waived the option to be sentenced by the court. *Id.* Further, Md. Rule 4-246(a) states that "[i]n the circuit court, a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule." Thurston does not have a constitutional right to a bench trial. The Sixth Amendment guarantees the right to a jury trial for a criminal defendant charged with non-petty offenses; there is no mention of a bench trial. *See* U.S. Const. amend. VI. As noted by the post-conviction court, Thurston never waived his right to a jury trial. ECF 7-2 at 365. Having opted for a jury trial, the court was not obligated to advise him on whether or not he was knowingly and voluntarily waiving his right to a jury trial. *Id.* at 366. This claim is without merit and must be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Since Thurston's conviction arose out of State court process, this Court must determine if a certificate of appealability is warranted. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Buck v. Davis*, 580 U.S. 100, 115 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)

(citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2).

Thurston may, however, still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

_2/18/2025____                                       _____/s/_____
Date                                                          Brendan A. Hurson
                                                                  United States District Judge

21